IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| MIGUEL GONZALEZ-SALAZAR, | § § § | |
| Petitioner, | § § | |
| v. | § § | 1:26-CV-864-RP |
| TODD BLANCHE, *in his official capacity as* *Acting Attorney General of the United States*, et al., | § § § § | |
| Respondents. | § § | |

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

Before the Court is Petitioner Miguel Gonzalez-Salazar's ("Petitioner") Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241, filed on April 7, 2026. (Dkt. 1). On April 10, 2026, pursuant to 28 U.S.C. § 2243, the Court ordered Respondents to show cause within three days as to why the petition should not be granted. (Dkt. 3). On April 13, 2026, Respondents Todd Blanche, Markwayne Mullin, Todd M. Lyons, and Sylvester Ortega (collectively, "Respondents")[1] filed a response in opposition, (Dkt. 5). Having considered the parties' arguments, the evidence presented, and the relevant law, the Court will grant Petitioner's Petition for Writ of Habeas Corpus.

### I. BACKGROUND

Petitioner, a citizen of Mexico, is detained at the T. Don Hutto Detention Center located in Taylor, Texas. (Pet., Dkt. 1, at 3). Petitioner entered the United States approximately twenty-two years ago without being admitted or paroled. (*Id.* at 6). He has two children who are U.S. citizens. (*Id.* at 4). Petitioner was detained by U.S. Immigration and Customs Enforcement ("ICE") after being stopped for allegedly having a broken license plate light. (*Id.* at 8).

---

[1] The Response is filed only on behalf of the federal employees in this action. (Resp., Dkt. 5, at 1 n.1).

Respondents assert that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2). (Resp., Dkt. 5, at 1, 4–7).

Petitioner alleges that he is entitled to a writ because (1) the Immigration and Nationality ("INA") detention authority purportedly being applied to detain him does not apply; (2) his detention violates his rights to due process under the Fifth Amendment; (3) his detention violates the Administrative Procedure Act; and (4) his detention violates the Suspension Clause. (Pet., Dkt. 1, at 24–31).

## II. DISCUSSION

### A. Administrative Exhaustion

To the extent an administrative exhaustion requirement would normally apply in this situation, "[b]ecause Respondents argue the detention of Petitioner is mandatory, claiming no one, including the [immigration judge], can review the detention issue, any attempt to require Petitioner to exhaust any administrative remedies [would be] futile." *Lorenzo C. P., v. Noem*, No. 1:25-CV-181, 2025 WL 3684859, at *5 (S.D. Tex. Oct. 31, 2025); *see also Shi v. Lyons*, No. 1:25-CV-274, -- F. Supp. 3d --, 2025 WL 3637288, at *4 n.6 (S.D. Tex. Dec. 12, 2025) (holding that administrative exhaustion would be futile in light of *Matter of Yajure Hurtado*). Respondents argue that Petitioner must exhaust his remedies by seeking a bond determination from the immigration court. (Resp., Dkt. 5, at 22–23). But Respondents simultaneously contend that Petitioner is subject to mandatory detention without a bond hearing. (*Id.* at 3). By Respondents' own interpretation of 8 U.S.C. § 1225 in *Matter of Yajure Hurtado*, Petitioner's exhaustion of administrative remedies would be futile.

### B. Petitioner's Petition for Writ of Habeas Corpus

This Court previously interpreted 8 U.S.C. § 1225(b)(2) as not applying to noncitizens like Petitioner who have been residing in the country for years, as opposed to a noncitizen present in the United States who has recently arrived and is actively seeking admission. *See, e.g., Guzman v. Bondi*, ---

F. Supp. 3d ---, No. 1:25-CV-2055-RP, 2025 WL 3724465 (W.D. Tex. Dec. 23, 2025). This interpretation was recently rejected by a Fifth Circuit panel. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026). *Buenrostro-Mendez* addressed only statutory interpretation. By contrast, it did not examine whether Petitioner's ongoing detention without access to a bond hearing violates the Constitution. *Id.*[2] As such, the Court turns to Petitioner's independent claim for release under the Due Process Clause.

"Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). Noncitizens are entitled to due process of the law under the Fifth Amendment. *Trump v. J. G. G.*, 604 U.S. 670, 673 (2025); *Demore v. Kim*, 538 U.S. 510, 523 (2003).

Contrary to Respondents' argument, (Resp., Dkt. 5, at 3, 16–18), "*Thuraissigiam* does not foreclose [Petitioner's] due process claims." *Ochoa v. Vergara*, --- F. Supp. 3d ---, No. 1:26-CV-266-RP, 2026 WL 482211, at *2 (W.D. Tex. Feb. 20, 2026) (quoting *Hernandez-Fernandez v. Lyons*, No. 5:25-CV-00773-JKP, 2025 WL 2976923, at *7 (W.D. Tex. Oct. 21, 2025)). There are "two key points of distinction between *Thuraissigiam* and [Petitioner's] case." *Lopez-Arevelo v. Ripa*, 801 F. Supp. 3d 668, 682 (W.D. Tex. 2025). First, unlike the petitioner in *Thuraissigiam*, Petitioner does not challenge the admission process in any way or assert a right to remain in the United States. *See Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 140 (2020) ("For these reasons, an alien in respondent's position has only those rights regarding *admission* that Congress has provided by statute.") (emphasis added). Petitioner "merely seeks a chance to apply for release . . . [and] [n]othing in *Thuraissigiam*

---

[2] Indeed, the Government's counsel stated during oral argument: "We have one issue before the Court now: the statutory question. . . . There's not, in other words, a due process claim here." Oral Argument, *Buenrostro-Mendez v. Bondi*, No. 25-20496, at 44:56–45:11 (5th Cir. Feb. 3, 2026), *available at* https://www.ca5.uscourts.gov/OralArgRecordings/25/25-20496_2-3-2026.mp3.

suggests [he] lacks such a due process right." *Hernandez-Fernandez*, 2025 WL 2976923, at *8. A "second key point of distinction is that Thuraissigiam was stopped by Border Patrol 'within twenty-five yards of the border,' immediately detained, and never released." *Id.* By contrast, Petitioner has lived in the United States for twenty-two years prior to his detention after a traffic stop. For constitutional purposes, Petitioner's time living in the United States differentiates him from the petitioner in *Thuraissigiam* because "the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693. "Th[is] distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law."[3] *Id.*

Beyond their arguments based on *Thuraissigiam* and the "entry fiction," Respondents also argue that (1) Petitioner is raising a substantive due process claim rather than a procedural due process claim because, as in *Connecticut Department of Public Safety v. Doe*, 538 U.S. 1 (2003), he "has not challenged the adequacy of the procedures for determining whether [he] is an 'applicant for admission'" and instead is disputing the "determination that Petitioner is an applicant for admission"; and (2) because individualized findings regarding flight risk and danger are irrelevant to § 1225(b)(2), under the reasoning in *Wekesa v. United States Att'y*, No. 22-10260, 2022 WL 17175818 (5th Cir. Nov. 22, 2022) (per curiam), Petitioner has no procedural due process right to a bond hearing on flight risk or danger to the community.[4] (Resp., Dkt. 5, at 12–16).

---

[3] *See also Mendoza v. Noem*, No. 5:26-CV-728-JKP (W.D. Tex. Feb. 26, 2026) (quoting *Martinez v. Noem*, No. EP-25-CV-430-KC, 2025 WL 2965859, at *4 (W.D. Tex. Oct. 21, 2025)). ("Further, even in circumstances like those here—lacking a prior detention, release, and re-detention—noncitizens already in the country who have 'established a life here—albeit without authorization,' possess 'a strong liberty interest in their freedom from detention.'").

[4] Respondents also cite for support the cases *Kaplan v. Tod*, 267 U.S. 228 (1925) and *Landon v. Plasencia*, 459 U.S. 21 (1982). Both cases are inapposite. The Supreme Court's analysis in *Kaplan* focused on statutory construction, and it related to whether she could "*be deported* upon a warrant issued more than five years after her entry into the United States." *Kaplan*, 267 U.S. at 230 (holding that the noncitizen had "never . . . been dwelling in the United States *within the meaning of the Act*" and stating that the two questions presented were whether the noncitizen became a citizen by the naturalization of her father and whether she could be deported five years after entering the country) (emphasis added). As to *Landon*, that case involved the due

The Court finds neither of these arguments to be persuasive. As to the first argument, the Court finds that *Doe* is highly distinguishable. In that case, the litigant was challenging the requirement for him to register as a sex offender without a hearing on the topic of whether he was "currently dangerous," though the statutory scheme at issue did not consider that factor. *Doe*, 538 U.S. at 4. The Supreme Court held that, because the determination sought by the litigant in such a hearing would have no bearing on the outcome, he had no procedural due process right to such a hearing. *Id.* at 7–8. The Court finds this reasoning to be inapplicable to this case for two reasons. For one, as a sister court in this District has already noted, *Doe* "arose in an entirely different context" than "an immigration detainee's challenge to their detention without a bond hearing." *Hernandez, v. ICE Field Off. Dir.*, No. EP-26-CV-67-KC, 2026 WL 503958, at *2 (W.D. Tex. Feb. 23, 2026). Given that "[f]reedom from imprisonment . . . lies at the heart of the liberty that [the Due Process] Clause protects," *Zadvydas*, 533 U.S. at 690, this Court similarly does not find that a case about registering as a sex offender is directly on point. Second, whether or not Petitioner is a flight risk or a danger *is* relevant to Petitioner's detention. Though Respondents frequently describe detention under 8 U.S.C. § 1225(b) as "mandatory detention," noncitizens who are detained under § 1225(b) *may* be released on parole for "humanitarian reasons or significant public benefit," so long as they "present neither a security risk nor a risk of absconding."[5] *See* 8 U.S.C. § 1182(d)(5)(A); 8

---

process rights of a noncitizen who was "*outside* the United States, seeking admission *into* the United States, based on established 'ties' to the country." *D.V.D. v. U.S. Dep't of Homeland Sec.*, --- F. Supp. 3d ---, No. CV 25-10676-BEM, 2026 WL 521557, at *30 n.78 (D. Mass. Feb. 25, 2026) (citing *Landon*, 459 U.S. at 32–34). Thus, neither of these cases are relevant to the Court's analysis.

[5] *See Aguilar v. Bondi*, 811 F. Supp. 3d 815, 820 n.1 (W.D. Tex. 2025) ("The Court recognizes that, while the phrase 'mandatory detention' is often used to describe detention under 8 U.S.C. § 1225(b), the phrase is somewhat of a misnomer, as courts have acknowledged that one detained under § 1225(b) may still obtain release through parole for 'urgent humanitarian reasons or significant public benefit.'").

C.F.R. § 212.5(b). Thus, a determination that Petitioner is neither a flight risk nor a danger is in fact not irrelevant, unlike in *Doe*.[6]

Second, Respondents' argument based on *Wekesa* is similarly unavailing. As a sister court in this District has explained, the Fifth Circuit only "fleetingly noted that Wekesa raised a due process challenge, [but] it did not address that argument or the facts underlying the case in its brief order, and neither did the district court." *Lopez-Arevelo*, 801 F. Supp. 3d at 683. Moreover, *Wekesa* is an unpublished opinion with no binding precedential value, and like the *Lopez-Arevelo* Court, this Court finds it unpersuasive. *See id.* The Court makes this determination particularly due to the fact that *Wekesa* involved a "due process challenge to prolonged, mandatory detention under § 1226," while this case "challenges the decision to subject [Petitioner] to mandatory detention under § 1225(b) at all, without any process or individualized reasons, after he spent [twenty-two] years" at liberty within the United States. *See id.* at 683–84.

Because Petitioner validly makes a due process argument, the Court will address whether Petitioner has succeeded on his procedural due process claim under *Mathews v. Eldridge*, 424 U.S. 319 (1976). "To determine whether a civil detention violates a detainee's due process rights, courts apply the three-part test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976)." *Martinez v. Noem*, No. 5:25-CV-1007-JKP, 2025 WL 2598379, at *2 (W.D. Tex. Sept. 8, 2025). Those factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the

---

[6] The Court also agrees with the reasoning of its sister court that the distinction between substantive and procedural due process in this context is not helpful, as "the two concepts are not mutually exclusive, and their protections often overlap." *See Valencia Reyes v. Noem*, 5:25-CV-1921-XR, at *9–10 (W.D. Tex. Feb. 25, 2026) (quoting *Albright v. Oliver*, 510 U.S. 266, 302 (1994) (Souter, J., concurring)).

fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 335.

All three *Mathews* factors weigh in Petitioner's favor. First, "[b]ecause he spent [twenty-two years] at liberty in the United States, [Petitioner] possesses a cognizable interest in his freedom from detention." *Hernandez-Fernandez v. Lyons*, No. 5:25-CV-00773-JKP, 2025 WL 2976923, at *9 (W.D. Tex. Oct. 21, 2025). This interest "deserves great weight and gravity." *Vieira v. De Anda-Ybarra*, No. EP-25-CV-00432-DB, 2025 WL 2937880, at *6 (W.D. Tex. Oct. 16, 2025) (citations omitted). The second factor—the risk of erroneous deprivation—also weighs strongly in favor of Petitioner. Petitioner lacks any opportunity to contest the reasonableness of his detention, meaning the risk of erroneous deprivation lies in this "automatic continued deprivation of liberty for a noncitizen." *Id.* at *7. As to the third factor, "Respondents, of course, have a generalized interest in ensuring noncitizens appear for their removal hearings and do not pose a risk to the communities in which they live." *Id.* at *6. "In any event, if such concerns exist, they would be squarely addressed" at a bond hearing. *Lopez-Arevelo*, 801 F. Supp. 3d at 687. Regardless, the government "conducted [bond hearings] for decades until its reinterpretation of the law earlier this year," reducing any purported interest in ceasing to hold bond hearings. *Id.* (citations omitted). As such, all three factors favor Petitioner, and the Court finds that Petitioner's detention without any opportunity to challenge his detention through a bond hearing violates the Due Process Clause.

Federal district courts in Texas, including this Court, have likewise found that similar instances of detention violated a Petitioner's right to procedural due process. *See, e.g., id.*; *Ochoa*, ---F. Supp. 3d ---, No. 1:26-CV-266-RP, 2026 WL 482211, at *2–4; *Vieira*, 2025 WL 2937880, at *7 ("In sum, Section 1225(b)(2) as applied to Petitioner violates his Fifth Amendment Due Process rights."); *Martinez v. Noem*, No. EP-25-CV-430-KC, 2025 WL 2965859, at *3 (W.D. Tex. Oct. 21, 2025) ("[T]he Court does not reach the statutory interpretation question because, assuming without

finding that the Government's new interpretation is correct, [petitioner] is entitled to due process and succeeds in his as-applied challenge."); *Ortega-Aguirre v. Noem*, No. 4:25-CV-04332, 2025 WL 3684697, at *3 (S.D. Tex. Oct. 10, 2025) ("Here, the Court finds that Petitioner is likely to prevail on the merits of his due process claim because he 'has been detained since August of 2025 without any individualized assessment of flight risk or dangerousness.'"); *Cordova v. Noem*, No. 3:26-CV-97-K-BN, 2026 WL 218938, at *3 (N.D. Tex. Jan. 28, 2026) ("[T]he Court holds that denying Petitioner a bond hearing under § 1225(b)(2) deprives him of procedural due process protections under the Fifth Amendment."); *Camacho-Gutierrez v. Thompson*, No. 5:25-CV-01876-MA, 2026 WL 195758, at *5 (W.D. Tex. Jan. 16, 2026) ("[T]he Court finds that Petitioner's detention without any notice or an individualized assessment deprives her of the constitutional right to procedural due process"); *Hernandez-Fernandez v. Lyons*, No. 5:25-CV-00773-JKP, 2025 WL 2976923, at *10 (W.D. Tex. Oct. 21, 2025) (finding "that detaining [petitioner] without any individualized assessment of his flight risk and dangerousness deprives him of his constitutional right to procedural due process," and collecting cases); *George v. Noem*, No. 3:25-CV-2935-S-BW, 2025 WL 3852946, at *4 (N.D. Tex. Dec. 19, 2025), *report and recommendation adopted*, No. 3:25-CV-02935-S-BW, 2026 WL 30829 (N.D. Tex. Jan. 5, 2026) ("[D]etaining [petitioner] without a bond hearing violates his Fifth Amendment rights."). Federal district courts in Texas have also made this finding subsequent to the Fifth Circuit issuing its opinion in *Buenrostro-Mendez*. *See, e.g.*, *Hassen v. Noem*, No. EP-26-CV-00048-DB, 2026 WL 446506, at *2 & n.1 (W.D. Tex. Feb. 9, 2026) (holding that *Buenrostro-Mendez* "does not change this case's outcome on procedural due process grounds"); *Clemente Ceballos v. Garite*, No. EP-26-CV-00312-DB, 2026 WL 446509, at *2 & n.2 (W.D. Tex. Feb. 10, 2026) (same); *Marceau v. Noem*, No. EP-26-CV-237-KC, 2026 WL 368953 (W.D. Tex. Feb. 9, 2026) ("The Court's conclusion is not changed by the Fifth Circuit's recent decision in *Buenrostro-Mendez* . . . *Buenrostro-Mendez* has no bearing on this Court's determination of whether [petitioner] is being detained in violation of [his]

constitutional right to procedural due process."); *Mendoza v. Noem*, No. 5:26-CV-728-JKP, at *7 (W.D. Tex. Feb. 26, 2026) (holding that *Buenrostro-Mendez* "only addresses a statutory claim" and "did not address and does not preclude consideration of constitutional and other claims"). This Court agrees with the Due Process Clause analysis in the above cases, and finding a constitutional violation, it need not reach the other issues briefed by the parties.

Turning to relief, in habeas cases where the Court finds an ongoing detention unlawful, "the typical remedy for such detention is, of course, release." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). "In recent months, courts across the country have ordered the release of detainees in similar situations." *Moctezuma v. Henkey*, No. 1:25-CV-00741-BLW, 2026 WL 18809, at *5 (D. Idaho Jan. 2, 2026) (ordering immediate release and collecting cases across jurisdictions); *Cruz-Reyes v. Bondi*, 5:26-CV-60, 2026 WL 332315, at *13 (S.D. Tex. Feb. 3, 2026) ("[D]ue process concerns weigh heavily in favor of granting immediate release."); *Santiago v. Noem*, No. EP-25-CV-361, 2025 WL 2792588, at *13−14 (W.D. Tex. Oct. 2, 2025) (collecting cases and finding that "immediate release appropriately remedies Respondents' violation of [Petitioner's] due process rights through her continued detention."); *Mendoza v. Noem*, No. 5:26-CV-728-JKP, at *16–18 (W.D. Tex. Feb. 26, 2026) (quoting *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 319–20 (E.D.N.Y. 2025)) (explaining, after finding a due process violation, that release is the proper remedy rather than a bond hearing because "a post-deprivation bond hearing before a DHS officer or even an immigration judge would provide no genuine opportunity to relief because the detention without adequate pre-deprivation procedures has already been carried out."). The Court agrees that the appropriate remedy for unlawful detention is release and will order Petitioner's immediate release.

### III. CONCLUSION

The foregoing order constitutes the Court's findings of fact and conclusions of law. For the reasons discussed above, **IT IS ORDERED** that Petitioner's Petition for Writ of Habeas Corpus is **GRANTED** as follows. All relief not granted is **DENIED**.

1. Upon receipt of this order, Respondents shall <u>immediately</u> release Petitioner from custody;

2. Respondents shall release Petitioner under conditions no more restrictive than those in place prior to the detention at issue in this case;

3. As soon as is practicable, and no less than two hours before release, Respondents shall notify Petitioner's counsel by email[7] of the exact location and time of Petitioner's release;

4. Respondents are enjoined from further detaining Petitioner without first conducting a bond hearing, scheduled with notice to Petitioner's attorneys and set at a date agreed upon by both parties. At such a hearing, Respondents bear the burden of justifying, by clear and convincing evidence of dangerousness or flight risk, Petitioner's detention.

   **IT IS FURTHER ORDERED** that Respondents shall provide a status report **on or before April 16, 2026**, detailing their compliance with this Order.

   **SIGNED** on April 14, 2026.

   _____
   ROBERT PITMAN
   UNITED STATES DISTRICT JUDGE

---

[7] Nicole True, nicole.true@nicoletruelaw.com

10